## James McGuirk v. John A. Connelly.

1. PRESUMPTIONS—*That Title is in the Vendor.*—Where a vendee accepts a contract for the sale of real estate in which the ownership of the vendor is assumed, and agrees to pay for the land without requiring the vendor to produce evidence of his title, the burden will be on him to show defects in the title. The presumption is that he satisfied himself respecting the title when he made his bargain.

Assumpsit.—Common counts. Appeal from the Circuit Court of Cook County; the Hon. EDWARD F. DUNNE. Judge, presiding. Heard in this court at the October term, 1899. Affirmed. Opinion filed March 26, 1900.

Statement.—This is an appeal from a judgment in favor of appellee and against appellant, for the sum of $760.87, rendered in an action of assumpsit to recover the purchase money claimed to be due from appellee to appellant under the following contract:

"Articles of agreement, made this *thirty-first* day of *December*, in the year of our Lord, one thousand eight hundred and ninety-*two* between *John A. Connelly, of the city of Chicago, county of Cook and State of Illinois*. party of the first part and *James McGuirk of Attica, Harper county and State of Kansas*, party of the second part; Witnesseth, That if the party of the second part shall first make the payments and perform the covenants hereinafter mentioned on *his* part to be made and performed, the said party of the first part hereby covenants and agrees to convey and assure to the said party of the second part, in fee simple, clear of all incumbrances whatever, by a good and sufficient *quit-claim* deed, the lots, pieces, or parcel of ground situated in the county of *Harper* and State of *Kansas*, known and described as *the southwest quarter of the southeast quarter and the southeast quarter of the southwest quarter and also the southwest quarter of the southwest quarter of section twenty-six (26), range nine (9), township thirty-one (31), being one hundred and twenty (120) acres, more or less, known as land pre-empted by Mathias Mirkus*, and the said party of the second part hereby covenants and agrees to pay to the said party of the first part the sum of *seven hundred* ($700) dollars in the manner following: *Two hundred dollars ($200),*

*on or before October 1, 1893, two hundred dollars ($200) on or
before October 1, 1894, two hundred dollars ($200) on or before
October 1, 1895, with interest at six per cent per annum, semi-
annually, and such portion of the remaining hundred dollars
as shall be left after redeeming from tax sale or obtaining deed
on July 1, 1893,* on the whole sum remaining from time to
time unpaid, and to pay all taxes, assessments or imposi-
tions that may be legally levied or imposed upon said land.
And in case of the failure of the said party of the second
part to make either of the payments, or any part thereof,
or perform any of the covenants on *his* part hereby made
and entered into, this contract shall, at the option of the
party of the first part, be forfeited and determined, and the
party of the second part shall forfeit all payments made by
*him* on this contract, and such payments shall be retained
by the said party of the first part in full satisfaction and in
liquidation of all damages by *him* sustained and *he* shall
have the right to re-enter and take possession of the prem-
ises aforesaid.

It is mutually agreed, by and between the parties hereto,
that the time of payment shall be the essence of this con-
tract, and that all the covenants and agreements herein
contained shall extend to and be obligatory upon the heirs,
executors, administrators and assigns of the respective
parties.

In witness whereof, the parties to these presents have
hereunto set their hands and seals, the day and year first
above written.

JOHN A. CONNELLY,    [SEAL.]
JAMES McGUIRK.       [SEAL.]

Sealed and delivered in presence of

W. H. CONDON."

The contract is on a printed blank, and the words in
italics are written, the remainder being printed. The word
"warranty" was next before the word "deed" in the
printed blank and was erased and the word "quit-claim"
was substituted therefor, and the words "with interest at
the rate of —— per centum per annum, payable ——annu-
ally," were in the printed blank next after the written
words "July 1, 1893," and were stricken out. After the
words "upon said land" in the printed form, were the
words "subsequent to the year," and those words were
stricken out.

The declaration consists of the common counts. The defendant pleaded the general issue and a special plea. The special plea avers, in substance, that the plaintiff represented to the defendant that he, the plaintiff, was the owner of and had a good, clear, unincumbered title to the premises described in the contract; that defendant relied on said representations and entered into the contract (setting it out in full as *ante*); that plaintiff, long prior to the execution of the contract, had lost all claim to the premises; that he never had title to the premises; that the premises were sold for taxes, and the purchaser, one Clendenin, obtained a certificate of purchase, which he assigned to one Zacharias, who assigned it to Mary A. Zacharias, his wife, who subsequently obtained a tax deed, and thereafter said Zacharias and his wife, Mary, conveyed the premises to defendant; that the sole consideration for the contract was the title; that as soon as defendant learned the foregoing facts, he notified plaintiff that the consideration had failed and canceled the contract, etc.

To this plea the plaintiff replied that the defendant undertook and agreed to pay all the taxes, and purchased the land subject to the outstanding tax sale, and denies all averments in the plea of representations made by him, the plaintiff. The plaintiff testified that the defendant had not paid him anything on the contract, and this is not contradicted.

Daniel Byrnes, plaintiff's attorney, testified that February 7, 1899, he tendered to the appellant, in witness' office, in the presence of Mr. Rufus King, appellant's attorney, a deed from appellee of the premises, and that appellant refused to accept it, and said to the witness that if he, the witness, would take $50 and dismiss the suit, he, appellant, would accept the deed.

The deed so testified to have been tendered to appellant is a quit-claim deed of the premises in question, running from John A. Connelly, as grantor, to James McGuirk, as grantee; is dated January 21, 1889, and is certified to have been acknowledged by Connelly at that date.

The trial took place May 15, 1899, and appellant, Mc-Guirk, testified that Byrnes did not tender the deed to him, and that he saw it for the first time in the court room about two weeks before the trial. He admitted that he was in Byrnes' office February 7, 1899, when Byrnes testified he tendered the deed, and did not deny offering Byrnes $50 if he would dismiss the suit. Mr. King was not called as a witness. Appellant's attorney put in evidence a deed of the premises of date July 25, 1885, from appellee Connelly to William H. Condon, acknowledged July 27, 1885, and recorded August 7, 1885, and appellee, in rebuttal, put in evidence a deed of the same premises from William H. Condon to appellant of date July 27, 1885, acknowledged at that date, and recorded May 18, 1886.

Appellant's counsel also produced evidence tending to prove the allegations in the special plea with reference to the sale of the land for taxes and the issuing and assignment of the certificate of purchase to Zacharias, and also put in evidence a tax deed to Mary A. Zacharias and a deed from her and her husband, F. R. Zacharias, to appellant, of date March 27, 1893, with certificates of acknowledgment and recording; also the general statutes of Kansas, and read in evidence certain sections thereof, one of which authorizes the county clerk to issue, in the name of the county, under his hand and the seal of the county, deeds to lands unredeemed from sales for taxes, and to acknowledge the same, and provided that a deed so issued shall vest in the grantee an absolute title, in fee simple, in the lands, and that, when duly acknowledged, the deed shall be *prima facie* evidence of the regularity of the prior tax proceedings.

There is no evidence of any representations by appellee to appellant outside of the contract sued on.

C. M. HARDY and L. M. ACKLEY, attorneys for appellant.

DANIEL BYRNES, attorney for appellee.

MR. JUSTICE ADAMS delivered the opinion of the court.
Counsel for appellant object that the contract was admit-

ted in evidence, without explanation of the erasures mentioned in the preceding statement. The record shows that the contract was executed in duplicate, that both copies were produced on the trial and shown to the appellant, that he compared his copy with appellee's, and that he admitted his signature to the contract and said, "If they both correspond, they are right." This disposes of the objection.

It is next contended that appellee was unable to perform and did not perform his part of the contract. The only evidence of inability relied on by appellant's counsel is the deed from appellee to Condon and the deed from Mary A. Zacharias, the owner of the tax title, and her husband, to appellant. The deed from Condon to Connelly is a sufficient answer to the prior deed from the latter to the former. As to the tax title, we think it clear from the terms of the contract that appellant purchased subject to the tax sale, or if a deed had issued, subject to the deed.

The consideration was $700, payable, $200 October 1, 1893, $200 October 1, 1894, $200 October 1, 1895, with interest at six per cent per annum, semi-annually, "and such portion of the remaining hundred dollars as shall be left after redeeming from tax sale or obtaining deed, on July 1, 1893." The language quoted shows that it was understood by the parties that there had been a sale of the premises for taxes, and that the agreement between them was that appellant should use as much as might be necessary of one hundred dollars of the purchase money to redeem from the tax sale, or obtain a deed on the sale, as he might see fit. By his contract he undertook either to redeem from the sale, or procure a deed, if the time for redemption had expired. Having so contracted, he can not be heard to claim that the tax sale, or the deed issued in pursuance of it, was an incumbrance. He contracted for a quit-claim deed, and the deed which Byrnes, on behalf of his client, tendered to him, is a sufficient quit-claim deed. It is true that he denied the tender, but it was a question for the jury and the court, who saw the witnesses and heard them testifying, to decide as between him and Byrnes, a

disinterested witness, which was entitled to the greater credit. There are circumstances which tend to corroborate Byrnes. Appellant admitted that he was in Byrnes' office February 7, 1899, when Byrnes testified he tendered the deed, and he did not deny that he offered Byrnes $50 if he would dismiss the suit. The deed which Brynes says he tendered is not only dated, but acknowledged, January 21, 1899, more than two weeks before the suit was commenced, indicating that it was prepared and acknowledged for delivery or tender to appellant. Appellant did not contract for a warranty deed or even that appellee should furnish an abstract. He evidently assumed that appellee had some title or interest in the premises, and contracted merely for a quit-claim deed. In Baxter v. Aubrey, 41 Mich. 13, the court, Cooley, J., delivering the opinion, say:

"We think, however, if the vendee accepts a contract in which the ownership of the vendor is assumed, and agrees to pay for the land without requiring the vendor to produce evidence of his title, the burden will be on him to show defects. The presumption will be that he satisfied himself respecting the title when he made his bargain."

As before stated, appellant purchased the land subject to the incumbrance of the tax sale, which incumbrance he undertook to remove, the consideration for this undertaking being appellee's agreement that part of the purchase money might be used for that purpose. He can not, therefore, rely on the tax title incumbrance as against appellee's claim. It is not claimed that the damages awarded are excessive. We are of opinion that, by the verdict of the jury and the judgment of the court, substantial justice has been done between the parties, and that there is no error in the instructions which would warrant a reversal of the judgment. Therefore the judgment will be affirmed.